STATE of Missouri, Respondent,

v.

Major LANG, Jr., Appellant.

No. 58211.

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

James W. Huck, St. Louis, for appellant.

HENRY I. EAGER, Special Commissioner.

Defendant was found guilty by a jury of first degree murder and sentenced to life imprisonment. The case was submitted on the felony murder doctrine, so no alternatives were submitted. This Court has jurisdiction under its order of April 9, 1973, since the appeal was filed prior to that date.

One James Lum, of Chinese extraction, operated a small carry-out restaurant at 5082 North Union in St. Louis. On November 24, 1971, he was shot and killed in the course of an attempted robbery at his restaurant. A group of five or six youths was involved. The actual shooting was done by one Edward Chew. The substantive testimony for the State came from Stanford Bell, one of the participants, and from statements made by the defendant to police. Defendant sought, without success, to suppress those statements, and no point is made on that subject here; nor does defendant contend that the evidence was in-

sufficient for submission. We may therefore omit many details of the evidence.

The jury could, and apparently did, find the facts to be as now related. Stanford Bell (who testified for the State) owned a .38 caliber pistol and had told defendant of this; on November 23, 1971, defendant asked him if he would bring the pistol over to Edward Chew's house the next day. He did so, at about 4:00 or 5:00 p. m., and met there with defendant, Chew, Oscar Robinson and Clifford Wilkes. Chew inspected the pistol; defendant said "Why don't we get the Chinaman?" or words substantially to that effect; defendant also said he needed some money to get the car fixed, and asked Bell if he was going; Bell replied "I guess I'll go." All this consumed half an hour to an hour. As they started to leave the house, Kenneth Nelson came up, was told about the project and said he would go. All six walked to Lum's place which was close by. All entered the place together except Wilkes who stayed outside; Nelson and "someone else" ordered some rice; while Lum went to prepare it these persons waited in a sort of waiting room. The place was lighted, but "someone" turned off the light at the switch; "somebody" locked the front door, and Bell heard it "click"; Lum came back with the food, Chew pulled out the pistol which Bell had furnished and grabbed Lum by the collar or shirt, saying "this is a stick-up." Chew at about this time called for "somebody" to kick a door open, and defendant did so. During this fracas, Lum broke away, got his revolver and fired one shot which went through a front window. At this time Bell headed for the front door but found it locked, and, with Nelson, went out through a glass window beside the door and ran; Nelson's hat was found on the front sidewalk, as was also the hat of defendant. Bell identified the pistol which was introduced at the trial as an exhibit.

When defendant was arrested, advised of his rights and told of the charges, he blurted out: "I didn't shoot him. I was there but I didn't shoot him." He later

made two oral statements which in part were: that Eddie grabbed the Chinaman by the shirt, pointed the pistol in his face, and said "don't run"; that Lum broke loose, grabbed his gun and fired one shot which hit the window; that he and Nelson pushed back, fell through the glass, heard two more shots, and the others ran out; that the five youths had talked at Chew's house about "sticking up the Chinaman's place on Union"; that when inside the place Bell locked the door, Chew grabbed Lum and put the gun in his face and said "Don't run, I want your money"; that Lum broke loose, got his gun, fired one shot into the front door; that Chew, "hemmed in," began shooting back "where the Chinaman was." Defendant and Nelson went through the glass and Bell followed. They all met again at Chew's house. Chew stated that he thought he hit the man and that he still had the gun.

Defendant further stated, by way of exculpation, that when the robbery was discussed he said that he did not want to get involved, that it would be nothing but a "bust" (meaning an arrest), and that he and Nelson went on to Lum's and ordered some rice; that about fifteen seconds later the others came in and the above events transpired.

From other testimony it was shown that Lum was found by the police lying on the floor of his shop; that he died from a bullet wound of the brain; that money was found in the restaurant by the police, indicating that the robbery was not consummated; that Nelson led the police to the revolver hidden in the attic of a residence; and that the "pellet" taken from Lum's brain was fired from the revolver already referred to and which Chew was carrying, —a .38 Harrington and Richardson. Stanford Bell admitted that charges had been filed against him, arising out of this affair, that he had been in jail, and that he had only recently been released upon and by reason of his agreement to testify. He understood that the charges against him had been dismissed. From these facts it is seen

that the only real issue was whether defendant was a participant in the attempted robbery as properly defined in the instructions, or whether he was merely a bystander, there to buy food. The jury did not accept his explanation.

Two points of alleged error are urged: (1) that the Court erred in refusing to instruct the jury that the testimony of an accomplice should be received with great caution, as requested by defendant; and (2) that it erred in overruling defendant's objection to that portion of the State's final argument in which the jury was told that life imprisonment meant confinement merely until such time as defendant was deemed to be rehabilitated.

█ Defendant tendered an instruction which was as follows: "The testimony of another party to an offense must be received by the jury with great caution, and the jury is not authorized to convict on the basis of the testimony of another party to the offense unless there is corroboration of the material fact that Major Lang participated in the attempt to rob James Lum." This instruction was an incorrect statement of the law. It has been held many times that a defendant may be convicted on the uncorroborated testimony of an accomplice. State v. Strong, 484 S.W.2d 657 (Mo. 1972); State v. Deiter, 446 S.W.2d 609 (Mo.1969); State v. Schnelt, 108 S.W.2d 377 (Mo.1937). It seems to be defendant's position that the Court should have corrected the instruction and should have given it as corrected. There are cases indicating that it has been the better practice to give a cautionary instruction on this subject, State v. Jones, 64 Mo. 391 (1877); State v. Harkins, 100 Mo. 666, 13 S.W. 830 (1890); State v. Jackson, 106 Mo. 174, 17 S.W. 301 (1891), but when considered as a whole the cases have not indicated that this is mandatory. Defendant cites cases holding that no such instruction is required unless one is requested. State v. Crow, 465 S.W.2d 478 (Mo.1971); State v. Garton, 371 S.W.2d 283 (Mo.1963); State v. Mahan, 226 S.W.2d 593 (Mo.1950). But

this does not necessarily mean that it was error to refuse to so instruct when an incorrect instruction was offered. This question involved a matter purely collateral and cautionary. It was not a part of the law of the case.

We find no case holding authoritatively that it was error to fail to correct and give such a cautionary instruction. State v. Chaney, 349 S.W.2d 238 (Mo.banc 1961) is cited and we shall discuss it briefly. There the allegedly incorrect instruction concerned the effect of impeaching testimony showing that a defense witness had previously told a different story. Three judges joined in an opinion holding that the Court should have given a correct instruction on the subject, two concurred in the result, and two dissented. The three judges apparently held that on certain collateral issues, as indicated in their opinion, the Court should give a corrected instruction in lieu of the one tendered. But that opinion expressly excluded mere cautionary instructions, saying at loc. cit. 244: "Likewise giving purely cautionary instructions, which may be discretionary with the court, should require the offer of a correct instruction; * * *." The two judges concurring in the result felt that the tendered instruction was correct, and one stated that the question of impeachment was a part of the law of the case, but that the Court was not required to correct an instruction on a collateral matter. We repeat here, what was said in State v. Taylor, 472 S.W.2d 395 (Mo.1971) at loc. cit. 403: "It has been substantially impossible to rely upon the Chaney case as authoritatively supporting any view." The opinion in Taylor contains a further analysis of the Chaney case. We conclude that Chaney was certainly not an authority requiring the trial court to correct and give a cautionary instruction, but rather indicates to the contrary. The trial courts have a wide discretion, generally, in the giving or refusal of cautionary instructions. State v. Gillman, 354 S.W.2d 843 (Mo.1962); State v. Breeden, 180 S.W.2d 684 (Mo.1944); State v. Taylor, 472 S.W.2d 395 (Mo.

1971). The instruction tendered in our case was purely a cautionary instruction, and its refusal did not constitute reversible error. We have given the defendant the benefit of a considerable doubt in considering this point on the merits, in view of the probable insufficiency of the assignment in the motion for a new trial.

Moreover, the action of the trial court on such rulings should be considered in the light of the actual circumstances. The purpose of the instruction sought here was solely to depreciate the testimony of Stanford Bell. He admitted that he was testifying because of the agreement to dismiss the charge or charges against him. Much of defendant's argument to the jury dealt with that admitted circumstance, and with Bell's hesitancy in certain respects, his "obvious interest," the inconsistencies in his testimony, the duty of the jury to assess the value of his evidence, and the *unbelievability* of his testimony; counsel finally called him "an obvious liar." Bell's testimony was corroborated in many respects by defendant's own statements to the police. The Court gave, and defendant's counsel argued, the usual instruction on the credibility of witnesses, including the duty to consider the interest of a witness. The credibility of Bell was indeed one of the most, if not the most, vital issue in the case, and the jury could not possibly have considered it lightly. Under these circumstances the failure to give an instruction concerning the testimony of an accomplice was not prejudicial.

For an additional and independent reason this case should not be reversed for failure to give such an instruction. Missouri Approved Criminal Instruction (MAI–CR) 2.01 is now the required instruction on the weight and value of the evidence and the believability of witnesses. Note 2 following that instruction provides, with an exception not applicable here: * * * no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony. Without limiting the

foregoing, no instruction may be given to the effect that the jury may convict on the uncorroborated testimony alone of any one witness or class of witnesses, or that the testimony of any one witness or class of witnesses, when uncorroborated, must be received with great caution or must be weighed any differently than that of other witnesses." In view of this mandate the Court could not, upon a retrial, give any instruction concerning the weight and value of the testimony of an accomplice, even if a correct one were offered. For this reason alone, if there were no others, the case should not be reversed for the failure to so instruct. And see also, State v. Green, 511 S.W.2d 867 (Mo.1974), footnote 1, p. 870. Defendant's first point is denied.

 The remaining point concerns the final argument of the State's counsel. Defendant's counsel had said that the State was asking the jury "to send a 19-year-old boy away for the rest of his natural life * * *." The only point now made concerning the State's final argument is that it told the jury that a "punishment of life imprisonment meant confinement merely until such time as defendant was deemed to be rehabilitated." After discussing what punishment is, generally, counsel for the State said: "MR. CHANCELLOR: Is it rehabilitation? Well, at 19, yes, perhaps there is a chance for rehabilitation. But even that is not what it is all about. I submit to you what it's about is this: That to exist in a society, you must be able to live together within accordance with certain laws. Those who evidence an inability to do this must be dealt with towards some purpose, so that those who wish to live in a society will have at their disposal gas stations by attendants who should not have to be armed, grocery stores, drugstores, yes, and carry-out restaurants. So what do you do? When people come forward and would prevent this very opportunity to survive, I submit to you, there is but one thing left that we can do. You take these people and you remove them from this community and you put them

somewhere else so that they cannot rob and kill and in the hopes that they will be rehabilitated. But you put them there until such time as someone deems them perhaps able to again live in society." Then there followed in the record: "MR. KASTEN: Objection." This was overruled. Counsel then proceeded, without objection, to argue briefly the necessity of law enforcement and possible rehabilitation. It is impossible to tell whether defendant was objecting to the entire portion of the argument quoted or only the last sentence. Much of it consisted of the necessity for law enforcement, which is an entirely proper argument. State v. Turner, 320 S.W.2d 579 (Mo.1959); State v. Laster, 293 S.W.2d 300 (Mo.banc 1956), and cases there cited. The last sentence, of course, referred to the period of confinement. If that was meant to be the subject of the objection, we note that counsel had already permitted a reference to "rehabilitation" without objection at the very beginning of the quoted argument.

It is universally held in Missouri that specific objections are required to evidence, arguments, or statements of counsel, and the objection must call the attention of the Court to the ground or reason for the objection. State v. Paglino, 319 S.W.2d 613 (Mo.1958); State v. Costello, 415 S.W.2d 816 (Mo.1967); State v. Smith, 194 S.W.2d 905 (Mo.1946); State v. Jones, 462 S.W.2d 661 (Mo.1971). Such an objection as "we object" does not preserve any question for review. The trial court must be given an opportunity to rule upon an objection giving stated reasons for exclusion. And the point raised upon appeal must be based upon the theory of the objection as made at the trial. State v. Jones, 515 S.W.2d 504 (Mo.1974). The objection here was wholly insufficient.

Under the circumstances we need not consider whether the argument was retaliatory. We do state, however, that in any event it would be purely speculative to say that the argument concerning the possible or probable length of the term of confine-

ment was prejudicial. On a verdict of guilty only one punishment was possible here, i. e., life imprisonment. The jury was adequately instructed with reference to its findings of guilt or innocence; and we would have to assume that it wholly disregarded the instructions if it permitted that argument to affect its finding on guilt. Defendant argues that it did. We cannot so find. Under these circumstances it would be futile to discuss the cases which defendant cites on the subject of arguments along somewhat similar lines.

Defendant has not asked that we consider the prosecutor's argument as plain error, but in any event we could not find here that "manifest injustice" resulted. State v. Patterson, 443 S.W.2d 104 (Mo. banc 1969); State v. Meller, 471 S.W.2d 184 (Mo.1971).

Finding no reversible error, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.