STATE of Missouri,
Plaintiff/Respondent,

v.

Richard SHERIDAN,
Defendant/Appellant.

No. ED 85090.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 21, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 10, 2006.

**58**

N. Scott Rosenblum, Mark W. Lyons and Nellie Ribaudo, Rosenblum, Schwartz,

Rogers & Glass, P.C., Clayton, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Richard Sheridan ("Defendant") appeals from a judgment entered in the Circuit Court of St. Charles County following his conviction on three counts of first degree child molestation and seven counts of third degree assault. Defendant contends that the trial court erred in: (1) overruling Defendant's objections to the rebuttal portion of the State's closing argument; (2) admitting the child victims' out-of-court statements made to their parents as well as investigators at the Child Advocacy Center; and (3) denying Defendant's motion for an *in camera* review of the State's written records of the complaining witnesses' inconsistent and contradictory statements. We affirm.

### Statement of the Facts and Proceedings Below

We recite the facts in the light most favorable to the verdict. In October 2002, Defendant began volunteering at Independence Elementary School in St. Charles, Missouri through a foster grandparent program. Prior to volunteering, the school performed a background check which did not raise any concerns. "Grandpa Sheridan," as he was referred to by many of the students, volunteered in several different classrooms.

Defendant assisted in Ms. Gump's third grade classroom. Defendant helped the children with their reading, and, on one

occasion, he monitored a math test for a group of students that included K.C. While taking the test, K.C. did not understand one of the questions, and she asked Defendant to explain it to her. As Defendant sat next to K.C. and explained the test question, he placed his hand up the back of her shirt and rubbed her back. Defendant proceeded to reach around toward the front of K.C.'s body and moved his hand across her chest. Uncomfortable, K.C. told Defendant that she did not need any more help. On another occasion, K.C. encountered Defendant in the hallway while she was delivering a note. When K.C. gave Defendant a hug, he put his hand up her shirt.

An incident with another student arose when Defendant assisted in Ms. Reidel's kindergarten class. While helping M.T. practice her telephone number, Defendant put his arm around her, reached inside her shirt and touched her breast.

A third incident occurred when Defendant volunteered in Ms. Carides' class. When helping with Ms. Carides' class, Defendant would take two or three children into the library to practice reading. On two separate occasions Defendant rubbed C.K.'s breast, vagina and buttocks in the library.

An additional incident occurred when Defendant volunteered in Ms. Moreland's kindergarten class. There, Defendant took children to the hallway to practice writing their names on the whiteboard. While in the hallway with J.F., Defendant reached down the back of her pants to touch her bottom. As J.F. wrote her name, Defendant rubbed J.F.'s buttocks.

J.F. and her parents approached Scott Andrews, principal of Independence Elementary School, regarding the alleged touching of J.F. As a result of that meeting, Mr. Andrews held a faculty meeting to inform the faculty of the allegations without disclosing the identity of the volunteer.

The school sent a letter to parents stating that the school had become aware of potentially inappropriate behavior on the part of a volunteer. The letter further advised that the volunteer was removed from the school and that the investigation was on-going. After reading the letter, several parents questioned their children regarding any inappropriate touching at school. Several children acknowledged that Defendant had touched them inappropriately.

Subsequently, the State charged Defendant, by grand jury indictment, with six (6) counts of child molestation and twelve (12) counts of assault in the third degree. Thereafter, the State filed a substitute information in lieu of indictment amending the charges to six (6) counts of child molestation and seven (7) counts of assault in the third degree. The complaining witnesses were juveniles K.C., M.T., C.K., K.L., J.F. and V.M.

Prior to trial, the State filed and called-up for an evidentiary hearing its motion to introduce statements of the complaining witnesses under section 491.075 RSMo 2000.[1] At the hearing the State produced

---

1. Section 491.075 provides, in pertinent part:

 1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566, 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

 (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

 (2) (a) The child testifies at the proceedings; or

two Child Advocacy Center investigators, Mr. Garrett Woods and Ms. Mindy Skaggs, who had previously interviewed some of the victims.

Mr. Woods testified that he used a five-step process in conducting his interviews that included, rapport building, anatomy identification, touch survey, abuse scenario and closure. Mr. Woods further testified he did not try to determine the veracity of the allegations made by the children he was interviewing because his role was to gather information. Mr. Woods stated that if he interviewed a child in a leading or suggestive manner then the child could give inaccurate or incorrect information. In addition, Mr. Woods explained that a child's memory could be tainted by people suggesting different matters to the child. Thus, the number of interviews a child underwent prior to his or her interview with Mr. Woods could affect the reliability of the interview. Mr. Woods admitted that he did not know how many interviews were conducted with the complaining witnesses prior to his interview. Finally, the State played small portions of the tapes so that Mr. Woods could identify the tapes as his interviews of the complaining witnesses in this case.

The State also presented the testimony of Ms. Skaggs, Mr. Woods' coworker at the Child Advocacy Center. Ms. Skaggs testified that she conducted one of the interviews of a complaining witness in this case. The State then played a small por-

tion of the tape so that Ms. Skaggs could identify the tape as her interview.

To allow for a full review of the video-taped statements, the trial court declined to rule on their admission at the conclusion of the hearing and instead took the State's motion under submission. However, the trial court failed to make findings regarding the reliability of the videotaped statements, as Section 491.075 requires, nor did the trial court ever rule that these statements were admissible under the statute.

At trial, the State presented testimony from several witnesses, including the alleged victims. K.C. testified that when she was in third grade at Independence Elementary School, she worked with Defendant, who was a volunteer. Defendant monitored a math test she took in late spring. During the test, six (6) children sat at a long table in the hall, outside the classroom, which had dividers between the students. K.C. testified that Defendant "stuck his hand up my shirt and started rubbing my back, and then moved toward the front and moved his hand across my chest" while she took the test.

K.C. admitted that she did not report this to her parents until after the school issued a newsletter regarding a volunteer who had inappropriately touched students. She testified that when her parents received the newsletter her mother asked her if anything happened to her. In response to this question, K.C. told her mother about the incident during the test.

(b) The child is unavailable as a witness; or
 (c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding. . . .

3. A statement may not be admitted under this section unless the prosecuting attorney makes known to the accused or his counsel his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the accused or his counsel with a fair opportunity to prepare to meet the statement.

The State also called J.F., who testified that a volunteer at school, "Grampa," touched her, under her pants, on her "bum" while she sat in the hallway outside the classroom and practiced spelling her name. J.F.'s parents learned about the incident when her mother touched her back and J.F. commented that a man at school had touched her like that as well.

M.T. testified that while she was in kindergarten she met a man called Grandpa Sheridan. She alleged that he touched her on her "boobie" with his hand while she was in the hallway practicing her telephone number. M.T. did not tell anyone about this happening right away. She was unable to say why she waited.

The State called C.K. who testified that her second grade teacher had a helper named Grandpa. C.K. testified that Defendant would work on reading with small groups in the library. C.K. testified that, on two occasions, while reading in the library, Defendant touched her breasts, vagina and buttocks. She could only guess that she waited to tell anyone because she was probably scared. She stated the kids were nice to Grandpa, would try and get his attention and would frequently give him hugs when he entered a room.

In her testimony, V.M. testified that Defendant would help her with reading while she was in Ms. Carides' class. She stated that Defendant touched her under her clothes on her back, thighs and stomach. V.M. also testified that Defendant kissed her on the lips and cheek and that his breath smelled like mint. V.M. admitted that she had a difficult time telling the truth when her parents were in the room. V.M.'s parents were present throughout her testimony and although V.M. admitted that she was lying during her trial testimony, she would not say which parts of her testimony were lies.

K.L. also testified that while she was in kindergarten a volunteer touched her on her bottom under her clothes while she sat at a table inside the classroom working on her math. K.L. testified that Defendant's skin touched her skin.

The State also called Mr. Andrews, the school's principal, and several teachers, each of whom described Defendant's role in their classroom. Under cross-examination, each denied personally witnessing Defendant commit any inappropriate behavior. At the conclusion of this testimony, the State rested and Defendant moved for a judgment of acquittal which the trial court denied.

The defense presented the testimony of Defendant, Dr. Rosalyn Schultz and Nicole Moreland. Defendant testified that he first began volunteering in schools in 1994 through the PALS program. In 1997, he started volunteering at a school closer to home through the Oasis program. In 2002, a foster grandparent program placed him in Independence Elementary School. Defendant denied ever touching J.F., K.C., C.K., M.T., K.L. or V.M. in an inappropriate manner.

Dr. Rosalyn Schultz, an expert in the area of evaluation of child abuse allegations, described proper techniques when interviewing children alleging sexual abuse. Dr. Schultz opined that the investigators and parents did not use proper interviewing techniques and did not follow proper protocol. At the conclusion of Dr. Schultz's testimony, the defense rested and the State presented rebuttal evidence.

In its rebuttal case, the State called Ms. Skaggs, the interviewer from the Child Advocacy Center who interviewed C.K. The defense objected to Ms. Skaggs testimony as improper rebuttal. The trial court overruled the objection and Ms. Skaggs explained the proper protocol to use in interviewing children as well as the

purpose behind conducting such interviews. Ms. Skaggs stated that she tried to avoid asking leading questions and use open-ended questions and that she did so in her interview with C.K. Following Ms. Skaggs' testimony, the State offered the videotape of Ms. Skaggs interview of C.K. into evidence. The trial court admitted the videotape and the jury viewed it.

Mr. Woods, the Child Advocacy Center interviewer who conducted a videotaped interview of J.F. and K.C., also testified in the State's rebuttal case. Following Mr. Woods' testimony, the State offered into evidence the two videotaped interviews of J.F. and K.C. and, upon admission, played them for the jury.

At the close of evidence, and after approximately twelve hours of deliberation, the jury rendered its verdict and convicted Defendant of three (3) counts of child molestation in the first degree and seven (7) counts of assault in the third degree. The jury found Defendant not guilty of two (2) counts of third degree assault. The jury, after a sentencing hearing, assessed a punishment as five (5) years on each of the three (3) counts of child molestation in the first degree and a fine on the remaining seven (7) counts. The trial court imposed the jury's recommended sentences running the child molestation counts consecutively for a total of fifteen (15) years and fining Defendant two hundred and fifty dollars ($250.00) for each of the third degree assault convictions. This appeal followed.

### Discussion

### I. State's Rebuttal Closing Argument

In his first point on appeal, Defendant contends that the trial court erred in overruling defense counsel's objections to two distinct portions of the State's rebuttal closing argument. Namely, Defendant asserts that the trial court erred when it allowed the State to reference: (1) Defendant's failure to offer exculpatory police reports or Division of Family Services ("DFS") reports; and (2) other children who were similarly victimized but had refused to come forward to face "the number one defense attorney in the State of Missouri." [2]

 As a general matter, a trial court has broad discretion in controlling the scope of closing argument and we will reverse the trial court's ruling only upon a clear showing of an abuse of discretion. *State v. Deck*, 994 S.W.2d 527, 543 (Mo. banc 1999). A prosecutor's statements have the requisite decisive effect only when there is a reasonable probability that the verdict would have been different. *Id.* When a claim regarding closing arguments is not preserved, our review, if any, is limited to plain error.

### A. Exculpatory Reports

Defendant asserts that the State improperly attempted to shift the burden of proof when it argued that, if defense counsel had exculpatory reports, he would have offered them into evidence at trial. Defendant identifies the improper argument as follows:

**State:** ... So let [defense counsel] go to trial to fool you people, get you to think

**2.** Although Defendant's point on appeal identifies the trial court's error as permitting the State to refer to other child victims, the Defendant also contends in the body of the argument that the trial court permitted an "ad hominem attack" on defense counsel and that "[h]aving received carte blanche from the trial court to convict [Defendant] by vilifying defense counsel, the prosecutor continued poisoning the jury with a blend of uncharged acts and personal attacks on counsel...." Although it is not proper to raise errors in the body of the argument which are not challenged in the point on appeal, we will address the claim of "personal attack."

that something different came out of the mouths of the witnesses. That the witnesses did not tell you what they did, because that's the only way you wouldn't convict him, if the facts were different. [Defense counsel] is a master of pulling things out of context. How many thousands of times in this case have you heard [defense counsel] quote a police report, a DFS report, or something, one line. How many of them did he put in evidence? Zero.

**Defense Counsel:** Objection. He knows I can't put the police report in evidence. That's improper.

**Court:** Overruled. Let's proceed.

**State:** If he thinks those completely exonerate this guy you would have seen them.

**Defense Counsel:** Your honor, I object. He knows we cannot put police reports in evidence.[3]

**State:** You can't ask for any of these because they are not in evidence. He has got to tell you, for example, [K.C.] told us it was the end of the table, the last cubicle, says that [K.C.'s mom] had some sort of press release before she talked to her daughter. That's not true. That's just two of the hundreds of times in his closing he misquotes the facts.

■ As an initial matter, we address whether Defendant's claim is properly preserved for review. Specific objections to evidence, arguments or statements of counsel are required to preserve a question for appeal. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974). To be sufficiently specific, the objection must "call the attention of the Court to the ground or reason for the objection[,]" which gives the court the opportunity to rule and give reasons for its decision. *Id.* To preserve an issue for appellate review, "the point raised upon

appeal must be based upon the theory of the objection as made at the trial." *Id.*

Here, although defense counsel objected, he did not object on the grounds that Defendant now asserts on appeal. At trial, defense counsel raised a general objection based on the fact that police reports and DFS reports are hearsay and therefore inadmissible to prove the truth of the matter asserted. On appeal, Defendant alleges that the State's argument improperly shifted the burden of proof to him. Accordingly, we review for plain error Defendant's allegation that the State's closing improperly shifted the burden of proof.

■ We rarely grant relief on the assertion of plain error regarding closing arguments because "in the absence of objection and request for relief the trial court's options are narrowed to uninvited interference with [the closing argument] and a corresponding increase of error by such intervention." *Deck*, 994 S.W.2d at 544 *quoting State v. Silvey*, 894 S.W.2d 662, 670 (Mo.banc 1995). We will grant relief only if Defendant can show that a manifest injustice will result if relief is not granted. *Deck*, 994 S.W.2d at 544.

■ Here, Defendant has failed to demonstrate that the above-cited portion of the State's closing improperly shifted the burden of proof to Defendant. In fact, in the argument cited by defense counsel, the prosecutor did not suggest that it is Defendant's burden to offer certain evidence, such as the DFS and police reports. Rather, read in context, the focus of the State's argument was on defense counsel's purported tendency to pull quotations out of context from various reports. Even if the comments could be construed as a contention that Defendant failed to offer certain types of evidence, we would not

---

**3.** The court did not rule on this second objection.

consider the argument error. Although a prosecutor may not comment on a defendant's failure to testify, he may, without improperly shifting the burden of proof, comment on a defendant's failure to offer evidence. *State v. Finerson*, 826 S.W.2d 367, 370 (Mo.App. E.D.1992).

### B. Uncharged Crimes

Defendant next asserts that the State improperly discussed uncharged crimes when the prosecutor referred to his reluctance in "making" other parents bring their children to court to testify and be cross-examined by Mr. Rosenblum. The Defendant identifies the following exchange as containing the problematic comments:

**State:** I can't make other parents bring their children in here either and subject them to the number one—

**Defense Counsel:** Objection, your Honor, that's improper.

**State:** He has asked about it, Judge. I can answer it.

**Court:** I believe he has. I am going to overrule the objection.

**State:** I cannot make other parents bring their children in here and subject them to the number one defense attorney in the State of Missouri.

**Defense Counsel:** You're Honor, that's absolutely improper.

**State:** If you don't believe me, just ask him.

**Defense Counsel:** Personalizing—

**Court:** Overruled. Ladies and gentlemen, this is argument, it's not evidence. Let's proceed....

■ As an initial matter, we note that although defense counsel objected, he did not object on the grounds that Defendant now asserts on appeal. At trial, defense counsel raised a general objection based on improper personalization. On appeal, Defendant alleges in his point relied on that the State's argument improperly referenced uncharged crimes. In light of the fact that the point raised on appeal is not based upon the objection made at trial, our review is limited to plain error. *See Lang*, 515 S.W.2d at 511.

■ Improper personalization, defense counsel's trial objection, occurs when counsel asks the jurors to put themselves, or another person, in the victim's shoes. *Hall v. State*, 16 S.W.3d 582, 585 (Mo.banc 2000); *State v. Hamilton*, 847 S.W.2d 198, 200 (Mo.App. E.D.1993) ("[a]n argument is not 'personalized' where it does not suggest a personal danger to the jurors or their families if the defendant were to be acquitted.") In light of this definition, clearly, the State did not engage in improper personalization.

■ Given the record, defense counsel more likely meant to object on the basis of an improper personal attack. We agree that a prosecutor's personal attacks on defense counsel are improper and objectionable. *State v. Reyes*, 108 S.W.3d 161, 170 (Mo.App. W.D.2003). Indeed, when, shortly after the above-quoted transcript excerpt, the State started to refer to defense counsel as "A–Number One," the trial court sustained an objection on the basis of "personalizing," specifically cautioning the State not to "refer to Mr. Rosenblum any more as A–Number One" and instructing the jury to disregard the comment. To warrant reversal, however, the objectionable personal attack must have a decisive effect on the outcome of the trial. "[W]here statements are directed at the tactics or techniques of trial counsel rather than counsel's integrity or character[,]the argument is permissible." *Id.* (internal quotation omitted). While the challenged statements mocked Mr. Rosenblum's reputation as a top criminal defense attorney and were arguably inappropriate,

they did not impugn Mr. Rosenblum's character or integrity. *See State v. Ward,* 807 S.W.2d 225, 226 (Mo.App. E.D.1991) (argument which could have been "better phrased," not subject of error where State suggested defense counsel was "capable and skillful" but did not imply counsel was "personally dishonest" or that defendant "must be guilty because of misconduct or bad reputation of his counsel."); *State v. Hornbeck,* 702 S.W.2d 90, 93 (Mo.App. E.D.1985) (prosecutor improperly accused defense counsel of conspiracy to commit a crime; trial court permitted jury to speculate on defense counsel's complicity in the crime charged.) Given the nature of the comments, we do not agree that they rise to the level of plain error.

Defendant also challenges the State's reference in closing to "at least three other kids" who did not testify because the State did not want to subject them to Mr. Rosenblum. Furthermore, Defendant contends the State improperly claimed in closing that "three other kids said something happened to them." The State responds that the prosecutor's comments constituted "retaliation" following defense counsel's comment in his closing that the jury never heard from certain children such as "M" and "E."

 As general matter, "evidence of uncharged crimes, wrongs, or acts is inadmissible to show an accused is predisposed to criminal conduct." *State v. Goodwin,* 43 S.W.3d 805, 815 (Mo.banc 2001). Put another way, evidence of prior crimes is inadmissible for the purpose of eliciting an inference that the defendant also committed the crime for which he is charged. *State v. Stoner,* 907 S.W.2d 360, 364 (Mo. App. W.D.1995). Counsel violates this rule when he offers evidence that shows the defendant committed, was accused of, was convicted of, or definitely was associated

with the crime. *Id.* Conversely, "[v]ague remarks cannot be characterized as clear evidence to associate defendant with other crimes." *Id.* In this case, the State did not argue that Defendant committed or was convicted of wrongdoing with other children. To the contrary, the record indicates that the State's reference in closing to "at least three other kids" was a vague, indefinite reference to children who chose not to testify at trial. Because this comment lacked any specific reference to another crime it was neither prejudicial nor decisive on the outcome of trial.

Moreover, review of the record indicates that comments made in Defendant's closing prompted the State's vague reference to "at least three other kids." A prosecutor may retaliate to issues raised in defense counsel's closing argument, "even if the prosecutor's argument would otherwise be improper." *State v. Wright,* 941 S.W.2d 877, 882–83 (Mo.App. S.D.1997). Here, defense counsel referred to both Michelle or "M" and Emily or "E" in his closing argument. Defense counsel specifically noted that the jury never heard from either Michelle or Emily. Given that defense counsel initially referred to the absence of Michelle and Emily, the prosecutor's brief mention and explanation of their non-appearance is not error. Point denied.

## II. Admission of Child Victims' Out-of-Court Statements

In his second point on appeal, Defendant contends that the trial court erred in admitting the Child Advocacy Center interview tapes of J.F., C.K. and K.C. into evidence without first holding a hearing as to the admissibility of the statements or entering findings confirming the authenticity, reliability and admissibility of the tapes as required by Section 491.075

RSMo.[4]

As a preliminary matter, we note that "Section 491.075 is implicated only when timely objections to the admissibility of a child's statement are made on proper legal grounds." *State v. Schuster,* 92 S.W.3d 816, 820 (Mo.App. S.D.2003). It is incumbent on the trial court to comply with Section 491.075 once the admissibility of the child's statements is questioned by a timely objection. *Id.* "The hearing provided for in Section 491.075 is not required, however, in the absence of an objection to the statements when they are offered." *Id.* In other words, where a party fails to raise a timely, specific objection to the introduction of a child's out of court statements, the trial court is deprived of the opportunity to correct any error and the statutory procedures and required determinations contained in Section 491.075 are inapplicable. *Id.*

In this case, the record reflects that, prior to trial, the State filed and called-up its motion to introduce statements of the complaining witnesses contained on four videotapes under Section 491.075. In response, the trial court held a hearing at which investigators from the Child Advocacy Center testified as to their methods and three videotapes were submitted to the trial court for review.[5] At the conclusion of the hearing, the trial court took the motion under submission. Despite the

hearing, the trial court failed, prior to trial, to make findings that the "time, content, and circumstances of the statement[s] provide[d] sufficient indicia of reliability."

During the rebuttal portion of its closing, the State called Ms. Skaggs of the Child Advocacy Center to testify regarding the videotaped interviews. In response, defense counsel objected stating:

> I will make two objections. A, that it is outside the scope of rebuttal. It's improper rebuttal. And I also object generally to the admission of any evidence regarding the CAC, anyone involved in the CAC interviews, and ask, to the extent that you are going to overrule the objection, I would object, just ask that it be a continuing objection through any individual that talks about CAC interviews and the admission of the tapes as well.

The trial court overruled the objection but noted that it considered this a continuing objection. However, although defense counsel objected on the basis of the scope of rebuttal, he did not object on the basis of hearsay generally, or more specifically, that the videotaped statements were inadmissible in the absence of a reliability finding pursuant to Section 491.075. Because Defendant failed to object to the admission of the videotape on the basis now asserted, we may review this issue only for plain

---

**4.** Although not addressed in his point relied on, in the argument portion of this point, Defendant also contests the admission of certain unspecified statements made by the child victims and offered into evidence by their parents. Initially, we note that we review only issues raised in the "points relied on" in an appellant's brief. *State v. Crenshaw,* 852 S.W.2d 181, 185 (Mo.App. S.D.1993). Even assuming, *arguendo,* that Defendant properly raised this argument in his point relied on, we are unable to exercise review. Defendant refers only generally to "hearsay statements" without identifying the specific hearsay statements he challenges. Nonetheless, we have

reviewed the testimony offered by each of the parents and find that defense counsel, not the State, elicited the detailed out-of-court statements made by the child victims to their respective parents. Where, as here, defense counsel fails to object to or elicits the challenged evidence the admission of such evidence is not error.

**5.** Contrary to Defendant's assertion in his point on appeal, the record clearly reflects that the trial court held a hearing pursuant to Section 491.075.

error. *State v. Brown*, 953 S.W.2d 133, 139 (Mo.App. W.D.1997).

■ Even if the trial court's failure to make the findings required by Section 491.075 constituted error, our review of the record reveals that such error did not lead to a manifest injustice or a miscarriage of justice. To determine if an out-of-court statement provides sufficient indicia of reliability, we look to the totality of the circumstances which indicate that the child was "particularly likely to be telling the truth" when he or she made the out-of-court statement. *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 256 (Mo.App. W.D. 2004). The specific factors to consider include: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) lack of motive to fabricate; and (4) use of terminology expected of a child of a similar age. *Id.*

Applying these factors to this case, the record supports a determination of reliability. Detailed testimony from both Mr. Woods and Ms. Skaggs sufficiently addressed the nature of the videotaped interviews and the types of questions asked.[6] Specifically, Mr. Woods testified that he used a five-step process in conducting his interviews that included, rapport building, anatomy identification, touch survey, abuse scenario and closure. Mr. Woods further testified he is impartial and that his role is to gather information. Both Mr. Woods and Ms. Skaggs viewed portions of the videotapes and confirmed their authenticity.

■ With regard to his interview of J.F., Mr. Woods testified that he interviewed J.F. on September 15, 2003 at the Child Advocacy Center.[7] At the time of the interview, J.F. was between 5 and 5½ years-old. In order to assess her cognitive level prior to the substantive portion of the interview, Mr. Woods asked and J.F. answered how to spell her name, what grade she was in and what she liked about school. Mr. Woods testified that J.F. appeared lucid and, during the anatomy identification portion of the interview, J.F. identified the female chest as "nipples," the vagina as a "vagina" and the buttocks as a "bum." J.F. then shared that a grandpa who worked at her school touched her on her bum, underneath her clothes.

■ Mr. Woods also testified that he interviewed K.C. on September 22, 2003 at the Child Advocacy Center.[8] At the time of the interview, K.C. was 9 years-old. In order to assess her cognitive level prior to the substantive portion of the interview, Mr. Woods asked and K.C. answered how to spell her name, what grade she was in and what she liked about school. Mr. Woods testified that K.C. appeared lucid and, during the anatomy identification portion of the interview, K.C. identified the female chest as "chest," the vagina as a "private area" and the buttocks as a "butt." K.C. then shared that a volunteer in her class touched her underneath her clothing on her back and then on her chest.

■ Ms. Skaggs testified regarding her interview of C.K. that took place on November 12, 2003 at the Child Advocacy

6. It bears noting that neither party filed copies of the videotape exhibits to aid in appellate review.

7. According to the Substitute Information in lieu of Indictment, Defendant's contact with J.F. occurred sometime between October 1, 2002 and June 30, 2003.

8. According to the Substitute Information in lieu of Indictment, Defendant's contact with K.C. occurred sometime between October 1, 2002 and June 30, 2003.

Center.[9] At the time of the interview, C.K. was 7 years-old. During the anatomy identification portion of the interview, C.K. identified the female chest as "boobs," the vagina as a "fronty" and the buttocks as a "butt." C.K. then shared that a grandpa touched her "boobs, fronty and butt" on two occasions in the school library. Based on the evidence adduced at the hearing, there was sufficient evidence to support a reliability finding. Accordingly, Defendant has failed to demonstrate manifest injustice and we deny his second point.

### III. Denial of Motion for *In Camera* Review

In his final point on appeal, Defendant contends that the trial court erred in denying his motion for an *in camera* review of the State's written records of complaining witnesses' inconsistent and contradictory statements. In support of his assertion, Defendant contends that prior inconsistent statements qualify as exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In essence, Defendant contends that because the only evidence against Defendant was the testimony of his alleged victims, evidence of inconsistent accusations and statements by those witnesses could have completely exonerated him.

 Although Defendant correctly asserts that under *Brady*, the State must turn over evidence in its possession that is favorable to the accused, "the defendant is not entitled to information on the mere possibility that it might be helpful." *See State v. Parker*, 886 S.W.2d 908, 917 (Mo. banc 1994). Rather, a defendant must make a plausible showing as to how the information would be material and favorable. *Id.* Moreover, before a court is required to conduct an *in camera* review of

records, a defendant must "set forth a factual predicate to justify such a review." *State v. Seiter*, 949 S.W.2d 218, 221–22 (Mo.App. E.D.1997).

In this case, Defendant filed his Motion to Compel the production of any written records that the prosecutor had "pertaining to the alleged victim's inconsistent and contradictory statements." In response, the trial court ruled:

> Defendant's motion to compel State to disclose prosecutor's notes of interviews with complaining witnesses is denied as no information exists that such notes contain exculpatory information and the prosecutor represents that the notes contain no exculpatory evidence.

> State, however, is ordered to review such notes and turn any exculpatory notes over to the defense or to the court for an in camera review.

The record indicates that Defendant failed to make any showing that the State failed to turn over inconsistent or contradictory statements by the State's witnesses. Moreover, Defendant concedes on appeal that his argument is "framed hypothetically" in that he admits to having no knowledge that contradictory or inconsistent statements are contained in the files he sought. Accordingly, Defendant failed to meet the threshold requirement for the trial court to order the production of the State's records. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.

---

**9.** According to the Substitute Information in lieu of Indictment, Defendant's contact with

C.K. occurred sometime between October 1, 2002 and June 30, 2003.