**Roger ASHBY, Appellant,**

v.

**Donald WYRICK, Warden, Appellee.**

No. 81–2377.

United States Court of Appeals, Eighth Circuit.

Submitted May 21, 1982.

Decided Nov. 30, 1982.

Rehearings Denied Jan. 3, 1983.

Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for appellant.

John Ashcroft, Atty. Gen., Jay D. Haden, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and BECKER,* Senior District Judge.

HEANEY, Circuit Judge.

Roger Brad Ashby appeals from a denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court[1] accepted the report and recommendation of a United States magistrate on November 10, 1981, and dismissed Ashby's case. The

court issued a certificate of probable cause to appeal on December 10, 1981. Ashby raises several issues on appeal. Before addressing these issues, we briefly sketch the facts underlying this action.

On August 7, 1974, at approximately 4:00 a.m., the victim, Rodney Wissman, parked his car in Capaha Park in Cape Girardeau, Missouri, to use a public restroom in the park. On leaving his car, he passed a tall, slender man wearing a black, wide-brimmed hat and a heavy jacket. Wissman exchanged "hellos" with the man and proceeded to the restroom. When he exited the restroom, he was directly confronted by the man in the hat and was immediately assaulted by that man and three others. They severely beat him and took property from his person and car totaling over four hundred dollars. Wissman knew none of his assailants. Around three weeks later, Wissman, his mother and two friends were in a pizza parlor in Cape Girardeau. Ashby entered the parlor, and Wissman identified him as the man in the hat who had participated in the robbery. Wissman's friends told him that the man was Brad Ashby. After unsuccessful attempts by Wissman's uncle to get Ashby to admit to the crime and return the property in the following days, Wissman reported the identification to the police. A jury found Ashby guilty of robbery in the first degree on February 20, 1976. On September 29, 1976, the Butler County Circuit Court of Missouri denied his motion for a new trial and sentenced him to twenty-five years imprisonment.

Ashby's retained counsel, Don U. Elrod, moved for leave to withdraw as Ashby's attorney in June of 1976, but Elrod did appear at Ashby's sentencing hearing in September of 1976. Ashby filed a *pro se* motion for leave to file an untimely notice of appeal in the Missouri Court of Appeals on November 8, 1976, claiming neglect on the part of Elrod. The motion was granted

---

* The HONORABLE WILLIAM H. BECKER, Senior District Judge, for the United States District Court for the Western District of Missouri, sitting by designation.

1. The Honorable John F. Nangle, District Judge in the United States District Court for the Eastern District of Missouri.

and Ashby filed a notice of appeal. The Butler County Circuit Court granted Elrod leave to withdraw as counsel on February 9, 1977. On March 22, 1977, Ashby, on his own, moved the circuit court to dismiss his appeal. He received a letter from the clerk of the Missouri Court of Appeals, dated August 2, 1977, stating that his appeal had been dismissed pursuant to that *pro se* motion.

Meanwhile, on March 29, 1977, one week after moving to dismiss his direct appeal, Ashby filed a *pro se* motion to vacate the judgment and his sentence, under Mo.R. Civ.P. 27.26, in the Butler County Circuit Court. This motion, along with an amendment filed January 26, 1978, raised in substance every issue he now presses on appeal before this Court. The state circuit court conducted an evidentiary hearing on April 5, 1979, and denied Ashby all post-conviction relief on July 31, 1979. The court dismissed Ashby's contentions concerning the dismissal of his direct appeal stating that a 27.26 proceeding was not designed to review such errors. Ashby appealed the circuit court's decision, which was summarily affirmed by the Missouri Court of Appeals in *Ashby v. State,* 598 S.W.2d 197 (Mo.App.1980).

On July 9, 1981, Ashby filed in the Missouri Court of Appeals a motion to recall the mandate dismissing his original direct appeal, in effect requesting reinstatement of that appeal. The motion apparently was dismissed without opinion on the same day. Thereafter, Ashby filed his present petition for a writ of habeas corpus in the United States District Court for the Eastern District of Missouri. We consider each of the issues raised on appeal of the district court's decision in turn.

■ First, Ashby claims ineffective assistance of counsel based on various alleged omissions in trial preparation by his trial counsel, Elrod. In particular, he claims that Elrod did not investigate the scene of the crime or the prosecution's evidence, that Elrod did not interview Wissman before trial, and that Elrod declined to interview or call alibi witnesses other than Ashby's former girlfriend. A prior investigation of the park and the prosecution's pictures of the area, which were admitted into evidence and which Wissman testified accurately portrayed the scene of the crime, or a pretrial interview of Wissman allegedly would have revealed that the light pole nearest the restroom had been moved between the time of the crime and the time the pictures were taken. The state 27.26 proceeding established that the pole actually had been moved around twenty-five feet, but, with an extended light standard on the new pole, the position of the light fixture itself was at most fifteen feet farther from the restroom at the time of the crime than as depicted in the pictures. The state court found that the lighting in the area was unaffected by this movement. Additionally, although Ashby alleged in his 27.26 motion that certain alibi witnesses would have helped his defense, he did not allege or present evidence of the substance of their possible testimony. On each of these particulars, therefore, the 27.26 court held that no evidence of ineffectiveness was presented, nor any prejudice shown assuming Elrod did fail to act as a reasonably competent attorney.

In the absence of any of the exceptions listed in 28 U.S.C. § 2254(d), we must presume that the factual determinations made by a state court are correct. Ashby alleges no facts, nor do any appear from the record, which would require us to consider evidence of ineffective trial preparation beyond that presented to the state court in his 27.26 hearing.[2] He was given a full opportunity to develop evidence on this claim before the

---

2. Ashby, in his petition for federal habeas relief and traverse to the state's response to the district court's "show cause" order, asserts that the judge presiding at his state post-conviction hearing failed to consider a second amended motion, allegedly filed by his appointed attorney Daniel T. Moore, and that the judge was prejudiced against him. We agree with the district court that Ashby's factual allegations do not support these assertions. In such a case, we give the factual determinations of the state court the presumption of correctness required by section 2254(d).

state court. We do not know why further development was not forthcoming, but on his bare allegations and the limited evidence presented to the state court, we cannot say that the district court erroneously dismissed this claim.[3]

Secondly, Ashby claims ineffective assistance of counsel at trial. He points to three occurrences to support this claim: (1) Elrod's failure to properly object to prejudicial cross-examination of Ashby; (2) Elrod's failure to object to testimony bolstering Wissman's out-of-court identifications of Ashby; and (3) Elrod's failure to object to the introduction of certain "mug books" into evidence. The cross-examination which Ashby claims should have been objected to concerned prior admissions of burglaries allegedly committed by Ashby, for which he had not been arrested or convicted.[4] The parties to this appeal disagree as to the propriety of such cross-examination under Missouri law at the time of trial. See State v. Foster, 349 S.W.2d 922, 925 (Mo.1961) (allowing cross-examination of defense witness on admission of prior mis-

conduct); State v. Dunn, 577 S.W.2d 649, 653 (Mo.1979) (en banc) (Foster does not apply to situation of a defendant being cross-examined in a manner which could prejudice the jury). Regardless of the prevailing view of state law, we believe that such cross-examination was sufficiently prejudicial to raise a question of its admissibility on federal due process grounds.[5] Even so, we cannot hold that Elrod was ineffective in this situation. He did object in a general manner twice to this line of questioning. Although general objections are normally insufficient to preserve a ruling for review, State v. Lang, 515 S.W.2d 507, 511 (Mo.1974); State v. Hurst, 612 S.W.2d 846, 855 (Mo.App.1981), the trial court sustained Elrod's first objection and changed that ruling once the prosecutor altered the form of the questioning. In such a case, Elrod might have reasonably decided that the court was sufficiently aware of the basis for the objection and that the judge felt the prosecutor's alteration cured any defect. Thus, we find that the record does not support a claim of inef-

---

3. The entire focus of the 27.26 proceeding was Ashby's evidence concerning the position of the light pole, the effect that position had on the illumination of the area at night, and the prosecuting attorneys' ignorance that the prosecution's pictures were not fair representations of the area when the crime occurred. Ashby produced testimony from the utility foreman who supervised the moving of the light pole and from the assistant prosecuting attorney involved in Ashby's original trial on these matters. Ashby also requested the transcript of the trial entered as evidence in his 27.26 hearing, but such a general admission of evidence did not aid the state court in deciding the claim of ineffective trial preparation.

If Ashby had alleged new evidence which was available at the time of the 27.26 hearing but not presented there, we might have been unable to consider it anyway. Such a disregard of state procedures to correct constitutional defects in state criminal trials is, in some instances, barred by the doctrine of exhaustion of state remedies. Camillo v. Wyrick, 640 F.2d 931, 934–935 (8th Cir.1981). See also Austin v. Swenson, 522 F.2d 168, 170 (8th Cir.1975); Larry Buffalo Chief v. South Dakota, 425 F.2d 271, 278 (8th Cir.1970). Thus, a federal evidentiary hearing on this claim would generally be improper even if it might develop facts supporting Ashby's position.

4. This particular line of questioning developed after Ashby answered cross-examination concerning some previous convictions. The prosecuting attorney asked Ashby if there were any other burglaries he would like to testify about. Elrod objected to this question, and was sustained. The prosecuting attorney then asked a series of questions concerning whether Ashby had ever admitted to other crimes, and how many if so. The attorney asked if he had admitted to two other crimes, five, or ten. Elrod then made a second general objection to this line of questioning. The court overruled this objection. The prosecuting attorney continued his litany for four more questions, the last of which was, "It's possible that you have committed as many as twenty-four burglaries?". Ashby responded, "What does that have to do with this case?" The prosecuting attorney then went on to other matters.

5. We do not reach that question in this case, since it is not clearly set forth in Ashby's petition, the district court did not consider or decide it, and it is not pressed on appeal. We only decide that Elrod's representation in the face of such cross-examination was not constitutionally deficient.

fective assistance of counsel based on Elrod's decision not to further object here.

At trial, Elrod also failed to object to the testimony of certain prosecution witnesses bolstering Wissman's out-of-court identifications of Ashby from police photographs and at the pizza parlor. We are not convinced that the Missouri case cited by the parties as controlling this issue, *State v. Degraffenreid,* 477 S.W.2d 57, 62–64 (Mo. 1972) (en banc), is really apposite, since there had been no impeachment of the identifying witness in that case and dicta by that court indicated that mere cross-examination to impeach the witness's testimony (which is all that was done to Wissman here) would be insufficient to allow bolstering testimony under Missouri law. *Id.* 477 S.W.2d at 63. In any event, we cannot hold that failure to object to the few isolated answers Ashby now contests amounted to constitutional ineffective assistance of trial counsel. Also, on appeal, Ashby contends that Elrod's failure to contest the introduction into evidence of the "mug books" from which Wissman selected Ashby was ineffective assistance. Although such conduct may be questionable given the connotations surrounding criminal "mug" shots, *see Cox v. Wyrick,* 642 F.2d 222, 227 (8th Cir.), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3013, 69 L.Ed.2d 394 (1981), we do not reach the merits of this issue since it was not raised in Ashby's petition, amendment, or traverse, nor was it considered by the district court below.[6] On the issues before this Court, we therefore affirm the district court's finding that the transcript of Ashby's trial does not present a case of ineffective assistance of trial counsel.

Thirdly, Ashby claims that he was denied a fair trial because the prosecution used perjured, false, material testimony. Ashby bases this claim on the admittedly mistaken testimony of Wissman that the pictures of the scene, introduced as prosecution Exhibits 4 and 5, were fair and accurate representations at the time of the

crime and on the use of the pictures themselves. We agree with the district court that the evidence produced at the state hearing of Ashby's 27.26 motion supported the findings of that state court that the attorneys for the prosecution had no knowledge of the inaccuracy and that the change in position did not prejudice Ashby, since the movement of the light pole did not affect the illumination of the area. We accept these findings and hold that Ashby has failed to demonstrate any unfairness on this issue.

Ashby's fourth and fifth claims are that he was denied a direct appeal, since he dismissed the appeal on the mis-advice of another inmate that the state could retaliate if he pursued it, and that he did not receive effective assistance of counsel necessary to properly decide whether he should dismiss the appeal. The respondent-warden confesses error in the district court's finding that these issues had not been properly exhausted, because they were clearly raised both in Ashby's 27.26 motion and in his July 9, 1981, motion to recall the mandate in the Missouri Court of Appeals. Instead, the respondent now claims that Ashby waived his right to consideration of these issues in a federal habeas proceeding by failing to pursue them on his appeal of the decision of the state court on his 27.26 motion. Ashby contends that Missouri procedural law was changing at the time of his 27.26 motion, and that change required him to raise the issues relating to the dismissal of his direct appeal on a motion to recall the mandate in the Missouri Court of Appeals rather than to further pursue them in his appeal of the 27.26 decision.

We agree with Ashby that Missouri law at the time he was making his various post-conviction motions was at least arguably confusing, *see Morris v. State,* 603 S.W.2d 938, 940–941 (Mo.1980) (en banc); *Hemphill v. State,* 566 S.W.2d 200, 208 (Mo.1978) (en banc); *Goff v. State,* 612 S.W.2d 900, 902 (Mo.App.1981), and that Ashby has twice

---

**6.** We also do not need to decide if this issue has been exhausted in any of Ashby's state court proceedings.

brought the issues relating to the dismissal of his direct appeal before the Missouri courts. In such circumstances, we hold that there was no procedural default by Ashby in his failure to pursue these issues on appeal of the 27.26 decision after that state court had refused even to consider these arguments. *Holtan v. Parratt,* 683 F.2d 1163, 1167 (8th Cir.1982).

■ The respondent further argues, on the merits of these issues, that Ashby made a voluntary, reasoned choice to waive his right to a direct appeal in order to take immediate advantage of the 27.26 procedure, the preferred method of raising a claim of ineffective assistance of trial counsel in Missouri. *See State v. Mitchell,* 620 S.W.2d 347, 348 (Mo.1981) (en banc); *State v. Johnson,* 637 S.W.2d 290, 292 (Mo.App. 1982). Ashby claims that the decision to dismiss his direct appeal was made on the mis-advice of another inmate that the state, or prison officials, could retaliate against him if he brought a direct appeal.

We cannot, however, decide the merits of Ashby's fourth and fifth claims on the record as it now exists. The district court failed to conduct an evidentiary hearing on whether Ashby's decision was made knowingly and intelligently[7] and whether Elrod had failed to give him effective advice concerning his right to appeal prior to the state court granting Elrod leave to withdraw as Ashby's counsel. Such a hearing should have been granted. Ashby's is the type of case in which a direct appeal is an especially important guarantee of fair state procedure, a fairness which might not be available in the same measure in a state or federal habeas proceeding. The prosecution's

case relied totally on the victim's identification of the defendant, and much evidence was introduced to test or bolster that identification. Whether any of the errors which Ashby now alleges would have required a new trial if raised on appeal, as a matter of state law, is a question to which Ashby feels he wrongly has been denied an answer. This is why an evidentiary hearing on the issues surrounding the dismissal of his direct appeal is critical. Such a federal hearing will not trespass on any factual findings of the state courts which were first presented these issues, because both the 27.26 court and the Missouri Court of Appeals, on his motion to recall the mandate, refused to consider these issues at all, much less to hear evidence on them.

In conclusion, we affirm the district court's dismissal of all of Ashby's claims regarding ineffective assistance of counsel before and during trial, the use of Wissman's mistaken testimony on the accuracy of photographs of the scene of the crime, and the use of those photographs at his trial. We remand, however, for further proceedings consistent with this opinion regarding Ashby's claims of denial of his right to a direct appeal of his conviction and ineffective assistance of counsel after trial.

LAY, Chief Judge, concurring.

The history of this case illustrates not only the foolishness and inefficiency, but more importantly the injustice which results when courts rigidly apply procedural rules in post-conviction proceedings without regard to the function and importance of the writ. Important and legitimate policies

7. The parties differ as to whether this issue should be decided under a "cause and prejudice," *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), or a "deliberate bypass/knowing and intelligent waiver," *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963), standard of review. Although recent dicta by the Supreme Court might be read to require a "cause and prejudice" approach to any "state procedural default," *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 801 (1982), we do not feel that the Court has completely discarded the "deliberate by-

pass/knowing and intelligent waiver" standard. *See Wainwright v. Sykes, supra,* 443 U.S. at 88 n. 12, 97 S.Ct. at 2507 n. 12 (Court declined to consider the continued applicability of the "knowing and intelligent waiver" standard to the facts of *Fay v. Noia, supra*). In a case such as the present one, in which the particular choice to forego a state procedure is customarily made by the defendant, rather than by the defendant's attorney, the approach taken in *Fay v. Noia, supra,* seems more appropriate. *Graham v. Mabry,* 645 F.2d 603, 606 (8th Cir. 1981).

underlie many of the procedures which must be followed in order to obtain a writ of habeas corpus. Rules of procedure insure comity[1] and protect the finality of previous decisions.[2] But these policies are not always paramount, are sometimes not implicated by a particular case, and occasionally may even be frustrated by the application of procedural rules designed to advance the policies.

Courts should be continually aware that the principal function of the writ of habeas corpus is the vindication of federal constitutional rights. Courts and legislators should also consider the realities of habeas corpus litigation. Most petitioners do not have assistance of counsel, most are confined in prisons, and many are poorly educated. These facts underlie the judicial policy of liberally construing petitions for habeas relief. *See Hill v. Wyrick,* 570 F.2d 748, 751 (8th Cir.1978).

In order to merit federal respect, state procedures must respect the importance of federal constitutional rights and recognize the plight of those who seek vindication of their rights after criminal conviction. In *Marino v. Ragen,* 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947), the Supreme Court confronted a situation similar to that evidenced by this case. Illinois had several procedures for collaterally attacking convictions. Petitioners often followed the wrong procedure and were denied relief in state court. The Supreme Court and other federal courts consistently refused to review the petitioners' claims on their merits until the petitioners exhausted available state remedies. In *Marino,* paralleling this case, the state argued in its own court that the petitioner had chosen the wrong remedy, and then it confessed error before the Supreme Court. The Court reversed and remanded the case to the state court. In a concurring opinion, Justice Rutledge wrote:

The trouble with Illinois is not that it offers no procedure. It is that it offers too many, and makes them so intricate and ineffective that in practical effect they amount to none. The possibility of securing effective determination on the merits is substantially foreclosed by the probability, indeed the all but mathematical certainty, that the case will go off on the procedural ruling that the wrong one of several possible remedies has been followed.

*Id.* at 565, 68 S.Ct. at 242 (footnote omitted).

Justice Rutledge concluded that the procedural barriers rendered state remedies unavailable and that the petitioner had thus satisfied the exhaustion requirement:

The Illinois scheme affords a theoretical system of remedies. In my judgment it is hardly more than theoretical. Experience has shown beyond all doubt that, in any practical sense, the remedies available there are inadequate. Whether this is true because in fact no remedy exists, or because every remedy is so limited as to be inadequate, or because the procedural problem of selecting the proper one is so difficult, is beside the point. . . .

Consequently, as far as I am concerned, the Illinois remedies are exhausted here. . . .

*Id.* at 569–70, 68 S.Ct. at 244–45 (footnote omitted).

Because constitutional rights are implicated and because petitioners are seldom assisted by counsel, procedural rules should not be technically construed. Justice Stevens recently wrote, "When a person's liberty is at stake,· . . . there surely is no justification for the creation of needless procedural hurdles." *Rose v. Lundy,* 455 U.S. 509, 550, 102 S.Ct. 1198, 1220, 71 L.Ed.2d 379 (1982) (Stevens, J., dissenting). Procedural barriers should not be used to discourage po-

---

**1.** *See Engle v. Isaac,* 456 U.S. 107, 127, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982); *Schneckloth v. Bustamonte,* 412 U.S. 218, 263–65, 93 S.Ct. 2041, 2066–67, 36 L.Ed.2d 854 (1973) (Powell, J., concurring).

**2.** *See Engle v. Isaac,* 456 U.S. at 127, 102 S.Ct. at 1571; Friendly, *Is Innocence Irrelevant? Col-*

*lateral Attack on Criminal Judgments,* 38 U.Chi. L.Rev. 142, 145–46 (1970); Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv.L.Rev. 441, 442 (1963).

tential petitioners—for such devices will block meritorious petitions as well as frivolous petitions. *See id.* Nonmeritorious petitions should not be disposed of on procedural grounds when courts could decide them on their merits. Such tactics are not only dishonest but cruel because they allow prisoners to continue to hope and work for relief when no relief is possible.

This case is also an example of how technical application of procedural rules protracts litigation and frustrates the courts' interest in finality. Instead of analyzing the merits of the petitioner's claims, the state courts and federal trial court forced Ashby to repeatedly raise his claim in different forums and different forms. Efficiency requires flexible application of procedural rules. *See Rose v. Lundy,* 102 S.Ct. at 1217 (Stevens, J., dissenting).

A flexible interpretation of procedural rules is necessary to adequately protect constitutional rights *and* to promote efficiency. In 1973, Justice Brennan wrote:

> [H]abeas corpus is not "a static, narrow, formalistic remedy," *Jones v. Cunningham, supra,* 371 U.S. 236, at 243, 83 S.Ct. 373, at 377, 9 L.Ed.2d 285 but one which must retain the "ability to cut through barriers of form and procedural mazes." *Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). See *Frank v. Mangum,* 237 U.S. 309, 346, 35 S.Ct. 582, 594, 59 L.Ed. 969 (1915) (Holmes, J., dissenting). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson, supra,* at 291, 89 S.Ct., at 1086.
>
> Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements.

*Hensley v. Municipal Court,* 411 U.S. 345, 349–50, 93 S.Ct. 1571, 1573–74, 36 L.Ed.2d 294 (1973).

Courts should, whenever they have the power and competence to do so, construe petitions and procedural rules in a manner which enables them to determine if petitioners' federal constitutional rights have been violated. As Justice Stevens wrote, "The availability of habeas corpus relief should depend primarily on the character of the alleged constitutional violation and not on the procedural history underlying the claim." *Rose v. Lundy,* 102 S.Ct. at 1218–19 (Stevens, J., dissenting).

In the present case, this entire proceeding could have been determined and closed in favor of the state, or alternatively, could have vindicated the defendant's claim of prejudicial error without further proceedings months or years ago if the state court had not been determined to set up procedural roadblocks to a lay petitioner. It is absurd to think that additional procedural roadblocks will deter prisoners from filing petitions to seek their release. Both federal courts and state courts who attempt to provide deterrents to prisoners by procedural technicalities only make work for themselves. It is true that procedural rules serve important policies as well. However, courts which too willingly enter into discussion of complicated and technical problems of exhaustion, which tackle procedural bypass questions with detailed determinations of "cause" and "prejudice," could conclude the proceedings more expeditiously by going directly to the merits. Post-conviction cases rarely result in relief; state and federal trial courts, now long familiar with established constitutional process, generally toe the constitutional mark. The merits of a case are more easily decided than the litigation of technical problems presented by procedural rules. The point is that all courts should be more resourceful by passing on the merits of all claims as soon as possible, rather than resorting to intricately involved procedural concerns which only serve to extend simple issues into protracted and frustrating satellite litigation. The real losers are the courts themselves.