# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1159

_____

Sheik Mark S. Moore-El,

            Appellant,

v.

Al Luebbers,

            Appellee.

\*          
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Eastern District of Missouri.
\*
\*
\*

_____

Submitted: October 13, 2005
Filed: April 27, 2006

_____

Before RILEY, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sheik Mark S. Moore-El appeals from the denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I.

Moore-El was convicted in Missouri state court of murder in the first degree, attempted robbery in the first degree, and two counts of armed criminal action. *See* Mo. Rev. Stat. §§ 565.020, 571.015, 564.011. The convictions arose out of the

murder of Tommy Vaughn on February 17, 1993. According to the evidence produced by the prosecution at trial, Vaughn had visited the home of Patricia Holmes, apparently in an attempt either to sell jewelry or purchase cocaine, and was the victim of a staged robbery by Moore-El and his companions. A prosecution witness, Lenell Charleston, testified that Moore-El was supposed to rob Vaughn, because "[s]ometimes that's what we would do, rob folks." (T. Tr. at 559). Charleston said that Vaughn resisted Moore-El's demands, and that Moore-El shot Vaughn in the back as he attempted to flee Holmes's property. Another witness, Maurice Willis, testified that Vaughn was "begging for his life" and running away from the house shortly before Moore-El fired a gun from the front porch. (*Id*. at 652, 655). The home's primary resident, Holmes, testified that she saw Moore-El come to the door in dark clothing while Vaughn was inside her house, and later saw an arm wearing what looked like a dark sweater holding a gun. (*Id*. at 698, 701-03). A fourth witness, Demetrius Taylor, testified that he heard noises, including scuffling and "wrastling," and later heard gunshots, but did not see who fired them. (*Id*. at 621-23).

At trial, Moore-El disputed the State's version of events and claimed that he was not present at Holmes's house when the murder occurred. He also presented the testimony of two eyewitnesses who claimed to have responded to newspaper advertisements, placed by Moore-El's grandmother, seeking witnesses to the shooting. The witnesses described the shooter as someone other than Moore-El, and one specifically implicated Charleston. The prosecution attempted to demonstrate that these witnesses were induced to testify by promises of favors by Moore-El's grandmother. One of the witnesses acknowledged on cross-examination that after she responded to the advertisement, Moore-El's grandmother had provided her with favors, including securing the witness employment at a nursing home and posting bond for the witness's release from jail. (*Id*. at 977-78). The State introduced a letter written by the other witness, which stated, "I spoke to that guy's grandmother. She didn't pick up the package today. I will not go to see anyone in his defense if I don't

get what was promised to us." (T. Tr. at 1127, 1178). A jury convicted Moore-El of all counts, and Moore-El was sentenced to death.

Moore-El timely filed a motion to set aside his conviction and sentence pursuant to Missouri Supreme Court Rule 29.15, and also filed a direct appeal of his death sentence to the Supreme Court of Missouri. The court considering the Rule 29.15 motion vacated Moore-El's death sentence, but rejected his other claims. Meanwhile, the Supreme Court of Missouri transferred Moore-El's direct appeal to the Missouri Court of Appeals. Because Moore-El's death sentence had been vacated, but no new sentence had been imposed, the appellate court dismissed his appeal for lack of jurisdiction. The appellate court directed the trial court to re-sentence Moore-El. Moore-El and the State then entered into an agreement calling for a sentence of life imprisonment without parole, but allowing that if Moore-El successfully attacked his conviction, then the State could seek the death penalty in a new trial. In accord with the agreement, Moore-El was re-sentenced to life without parole.

After the re-sentencing, the state appellate court regained jurisdiction over Moore-El's consolidated appeal. That appeal raised several issues, including arguments that Moore-El's trial counsel performed inadequately by failing to discover information about other prosecutions of the witness Lenell Charleston. The Missouri Court of Appeals found none of Moore-El's arguments persuasive and affirmed the conviction in June 2000.

Moore-El then filed a second, pro se motion under Rule 29.15, again arguing that his trial counsel was ineffective. The motion court appointed counsel to represent Moore-El during this proceeding, but limited his claims to those arising from his re-sentencing and subsequent proceedings. The court dismissed all other claims as successive. Moore-El appealed this decision, arguing that he was entitled to file more than one motion pursuant to Rule 29.15, but the Missouri Court of Appeals affirmed the motion court's decision concerning successive claims.

In 2003, Moore-El filed a pro se petition for a writ of habeas corpus in the district court, and later amended the petition with the assistance of counsel. His amended petition sought relief on a variety of grounds, including multiple alleged examples of ineffective assistance of counsel. In particular, Moore-El argued that the State violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose inducements offered and threats made to witnesses Lenell Charleston, Patricia Holmes, Demetrius Taylor, and Maurice Willis. He also asserted that he was deprived of his Sixth Amendment right to counsel by his attorney's ineffectiveness in failing to discover and present evidence of those alleged inducements and threats. Among his other claims, Moore-El argued that his counsel was ineffective for failing to discover exculpatory testimony from potential witnesses Kim Tuppman and Sharon Watkins. A magistrate judge recommended denial of the petition, finding that the majority of Moore-El's claims were procedurally defaulted by his failure to raise them in his first appeal to the Missouri Court of Appeals. The magistrate judge found that the claims regarding Lenell Charleston were not procedurally defaulted, but recommended denial of those claims on the ground that the Missouri court had not unreasonably applied federal law.

After the magistrate judge issued her recommendation, Moore-El moved to amend his petition and add another claim that his trial counsel was ineffective for failing to interview and call as a witness a woman named Loretta Petty, or, in the alternative, that the State violated his rights under *Brady* by failing to disclose Petty's potentially exculpatory testimony. The district court[1] considered the motion to amend along with the rest of Moore-El's claims. On December 9, 2004, the court denied relief on all claims, but granted his request for a certificate of appealability on the questions whether the State violated its duties under *Brady* with regard to witnesses Charleston, Holmes, Taylor, and Willis, and whether the trial counsel was ineffective

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Mary Ann Medler, United States Magistrate Judge for the Eastern District of Missouri.

-4-

for failing to call those witnesses. The district court also granted a certificate of appealability on its denial of Moore-El's motion for leave to amend. Our court expanded the certificate of appealability to include his claim that his counsel was ineffective in failing to investigate and present the testimony of Kim Tuppman and Sharon Watkins.

## II.

We turn first to Moore-El's argument that the district court erred in concluding that he had procedurally defaulted his claims that the State withheld evidence about witnesses Taylor, Willis, and Holmes, and that his counsel was ineffective in failing to call witnesses Tuppman and Watkins. In order to preserve a claim for relief, a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc). Where a claim is defaulted, a federal habeas court will consider it only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Sawyer*, 505 U.S. at 338-39.

Missouri law requires that a habeas petitioner bring any claim that a conviction violates the federal or state constitution, including a claim of ineffective assistance of counsel, in a motion for post-conviction relief under Rule 29.15. *See* Mo. Sup. Ct. R. 29.15(a) ("This Rule 29.15 provides the exclusive procedure by which [a person convicted of a felony after a trial] may seek relief in the sentencing court for the claims enumerated."); *see also Schleeper v. State*, 982 S.W.2d 252, 253 (Mo. 1998) (en banc). Rule 29.15 requires the movant to acknowledge that any known claims not presented in the motion are waived, *see* Mo. Sup. Ct. R. 29.15(d), and "successive"

motions for relief are not permitted. *See* Mo. Sup. Ct. R. 29.15(*l*). A second motion for relief will be denied even if the grounds stated in the second petition are new, if the claims could have been raised in the previous motion. *Pinson v. State*, 784 S.W.2d 846, 847 (Mo. Ct. App. 1990). This rule is designed to adjudicate all claims for relief in one proceeding. *Id.*

In his initial motion under Rule 29.15, Moore-El presented claims that his counsel was "ineffective in that he did not talk to or examine any of the State's witnesses . . . prior to the day of trial," and that the failure to interview witnesses "resulted in counsel being ineffective in cross-examining the witnesses at trial, in that counsel was unable to adequately expose the witness' bias, inconsistencies and motives for testifying." The witnesses listed included Patricia Holmes, Lenell Charleston, Demetrius Taylor, and Maurice Willis. (Add. at 107). Moore-El also argued that "[t]he state failed to disclose . . . records . . . of the numerous exculpatory and inconsistent statements and stories told by Lennell Charleston, Maurice Willis, Pat Holmes, and Demetrius Taylor during the investigation of the crime." (Add. at 111). The motion court rejected both of these claims, and Moore-El appealed to the Missouri Court of Appeals.

On appeal, however, Moore-El did not renew his arguments that counsel had been ineffective with respect to the enumerated witnesses, or that the government had withheld exculpatory evidence. The district court found that Moore-El's failure to appeal these claims constituted an abandonment of those claims under Missouri law, and that the claims were therefore procedurally defaulted. *See Lowe-Bey v. Groose*, 28 F.3d 816, 818 (8th Cir. 1994); *see also O'Neal v. State*, 766 S.W.2d 91, 91 (Mo. 1989) (en banc).

Moore-El argues that three of his claims – his *Brady* claim regarding witness Patricia Holmes and his ineffective assistance of counsel claims regarding witnesses Tuppman and Watkins – were preserved, because he mentioned these claims in Point

IX of his appeal brief to the Missouri Court of Appeals. Point IX of the brief asserts that "[t]he motion court erred and abused its discretion when it denied Mark's requests for a continuance, his motions to dismiss postconviction counsel and to proceed pro se, his motion to reopen the evidence, applications for a writ of habeas corpus, motion for subpoenas, endorsement of witnesses, request to keep the hearing open, and request for relief under Rule 75.01 . . . ." (Add. at 100). The brief goes on to argue that

> [t]he motion court's rulings precluded Mark from adducing evidence supporting Mark's 29.15 claims of innocence and ineffective assistance of counsel, such as witnesses whose existence were or should have been known by [trial counsel] Reardon prior to trial: (A) Sharon Watkins (Watson) who would have testified that she witnessed the crime, and Mark was not involved; . . . (E) Patricia Holmes would have testified that her trial testimony was the product of undisclosed threats and promises by the State; (F) Kim Tuppman would have testified that Mark did not shoot Vaughn, rather the shooter fit the description of Charleston . . . .

(Add. at 100-01). The brief then contends that the motion court's rulings were "an abuse of discretion and denied [him] a full and fair evidentiary hearing." (Add. at 105).

We agree with the district court that the appeal brief asserts error in various enumerated "rulings" of the motion court without raising directly the constitutional claims based on alleged ineffective assistance of counsel. In order to preserve a claim for relief, a habeas petitioner "must present both the factual and legal premises" of his claim to the state court, *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994), and afford that court a "fair opportunity" to review its merits. *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003). That Moore-El believed certain rulings of the motion court hampered his ability to develop his claim of ineffective assistance did not excuse him from raising the Sixth Amendment claim on appeal.

-7-

Moore-El's appeal brief did not argue that counsel was ineffective in failing to call Tuppman and Watkins, and it did not invite the state appellate court to address the merits of such an argument. Instead, it attacked various motion court rulings as an abuse of discretion that "precluded [him] from adducing evidence." (Add. at 100). The mention of Patricia Holmes in Point IX is even more remote from the current claim. In the state court appeal, Moore-El argued that the motion court's rulings prevented him from developing a claim of ineffective assistance of counsel, while his current claim is that the State violated *Brady* by withholding impeachment material. We conclude that none of these references to Holmes, Tuppman, or Watkins was sufficiently specific to preserve the claims that were subsequently raised in Moore-El's habeas petition.

With respect to claims regarding Holmes, Taylor, Tuppman, and Watkins, which he attempted to raise in a second pro se Rule 29.15 motion, Moore-El contends that Missouri law was "at least arguably confusing" on the question whether an unappealed claim could be revived in a subsequent motion, so the claims were not defaulted. *See Ashby v. Wyrick*, 693 F.2d 789, 793 (8th Cir. 1982). In support of this alleged confusion, Moore-El points to the language in Rule 29.15(d), which permits a motion under Rule 29.15 to include "all claims for relief known to the movant," and argues that this language potentially permits a movant to raise any issue in a subsequent Rule 29.15 motion. We find no merit to this argument, because it ignores the plain language in Rule 29.15(*l*) prohibiting "successive" motions. Moore-El could have raised these arguments in his first Rule 29.15 motion, so the second motion was successive. *Pinson*, 784 S.W.2d at 847.

As for claims that pertain to witnesses Willis and Taylor, Moore-El argues that he is now raising a new argument regarding exculpatory evidence, this time focused on "threats and inducements" that persuaded Willis and Taylor to testify, rather than on the inconsistent and exculpatory statements discussed in his original state court motion. To the extent these are new claims, they are nonetheless defaulted by Moore-

El's failure to present them to the Missouri court as required by Rule 29.15. *See Hornbuckle v. Groose*, 106 F.3d 253, 255 (8th Cir. 1997). We therefore agree with the district court that Moore-El's claims regarding witnesses Holmes, Taylor, Willis, Tuppman, and Watkins were procedurally defaulted.

We also agree with the district court that Moore-El has not shown cause and prejudice that would permit the court to entertain his defaulted claims regarding Holmes, Taylor, and Willis. Assuming that the State's alleged failure to disclose certain information constitutes "cause" for Moore-El's failure to raise the claims earlier, we are not persuaded that the proffered information creates a reasonable probability that the outcome of the trial would have been different. These witnesses were subject to impeachment on several grounds during the trial, including their prior criminal histories and possible involvement in the Vaughn attempted robbery and murder, and the jury was able to infer their potential bias toward the prosecution. The defense case was substantially discredited by evidence that one eyewitness wrote a letter indicating that she had been promised something in consideration for her testimony, and by an admission of another that Moore-El's grandmother had done "big favors" for her by getting her a job and posting bond for her. Viewing the trial record as whole, we do not think the alleged inducements and threats described in the defaulted claims are sufficient to create a reasonable probability that a jury aware of this new information would have acquitted Moore-El of the murder. *See Strickler v. Greene*, 527 U.S. 263, 291 (1999). Because Moore-El has not met his burden of showing that his procedural default should be excused, the district court did not err in declining to consider the defaulted claims.

III.

Like the district court, we conclude that the only portion of Moore-El's federal habeas petition that was not procedurally defaulted is the claim that the government withheld exculpatory evidence by not disclosing alleged threats and inducements

toward witness Lenell Charleston.[2] According to Moore-El, the State promised Charleston lenient resolution of his pending drug charges if he would testify against Moore-El, and the State did not disclose these inducements to testify to Moore-El as it was required to under *Brady.*

Relief under § 2254 is available only when the initial adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established law if it "applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision is an "unreasonable application" of clearly established law if "the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the particular case." *Id.*; *see Williams v. Taylor*, 529 U.S. 362, 405 (2000).

During its consideration of Moore-El's *Brady* claim, the Missouri motion court heard testimony from Charleston's attorney, Richard Fredman, and from Johnny Liston, an acquaintance of Charleston's. Fredman testified that he believed, and conveyed to Charleston, that Charleston's testimony in Moore-El's trial would "work to our advantage" and "put us and his case in a better position," but that he and the prosecutor "specifically made no agreement" regarding the treatment of Charleston's

---

[2]Although the certificate of appealability permitted Moore-El to address both the *Brady* claim and the alternative argument that his trial counsel was ineffective in failing to discover evidence about Lenell Charleston, he has abandoned the latter argument by failing to brief it on appeal. *See United States v. Zavala*, 427 F.3d 562, 564 n.1 (8th Cir. 2005).

-10-

case.  (Motion Ct. Tr. at 166-67, 172).  For his part, Liston testified that Charleston had told him that by testifying, Charleston was avoiding potential charges related to the murder.

Both the motion court and the Missouri Court of Appeals concluded that there was no *Brady* violation in the State's failure to disclose any alleged agreement.  The motion court found that Liston was not credible.  (J.A. at 518).  It further determined that there was "no express agreement between the State and its witnesses," although the "evidence at trial . . . clearly indicated that Charleston had pending cases and permitted an inference that the State would treat him favorably if he testified for the State."  (J.A. at 517).  The court of appeals affirmed, concluding that:

> While the prosecutor has an obligation to disclose the state's agreement favorably to dispose of charges pending against a witness in exchange for the witness' testimony, there is no credible evidence of record that there was an agreement between State and Charleston for the favorable disposition of his pending drug charges in exchange for his testimony in Moore's case.   Therefore, State did not engage in prosecutorial misconduct and Moore's trial counsel was not ineffective for failing to ascertain, disclose, and use an agreement for the favorable disposition of Charleston's pending charges.

(J.A. at 306) (internal citation omitted).

Moore-El now argues that this decision unreasonably applied *Brady* by requiring that only "express" agreements be disclosed to the defendant.  (Pet'r Br. at 55).  This argument misreads the decision of the Missouri Court of Appeals, which is the final word from the state courts on this matter.  The appellate decision concluded that "there is no credible evidence of record that there was an agreement" between the State and Charleston; it did not rely on the absence of an "express" agreement.  The state court's factual determination is presumptively correct, *see* 28 U.S.C. § 2254(e)(1), and the finding of no agreement is consistent with the straightforward

-11-

testimony of Charleston's attorney that he and the prosecutor never made an agreement. Moore-El has not advanced clear and convincing evidence that the determination is erroneous. *See id.*

A witness's "nebulous expectation of help from the state is not *Brady* material," *Hill v. Johnson*, 210 F.3d 481, 486 n.1 (5th Cir. 2000) (internal quotations omitted), and absent evidence that the State communicated an agreement that it would consider rewarding Charleston's testimony, there was nothing for the government to disclose. An experienced defense attorney may well have hoped and even expected that Charleston's testimony would result in leniency from the prosecution, but that educated prediction is not the equivalent of an affirmative act by the State to hold out a potential reward to the witness if his testimony proves helpful. As the motion court observed, the evidence permitted an inference that the State would treat Charleston favorably if he provided assistance, and Moore-El was free to argue this inference of bias when attacking Charleston's credibility. Indeed, defense counsel made that very argument to the jury, emphasizing that Charleston had admitted aiding and abetting an attempted robbery that resulted in Vaughn's death, but had never even been charged for attempted robbery, and that Charleston had a great deal to lose if he had not pointed the finger at Moore-El. (T. Tr. at 1189-93).

Moore-El also argues that the deferential standard of § 2254(d) should not apply because the Missouri Court of Appeals did not address the particular issue he now raises. According to Moore-El, new evidence has surfaced, in the form of statements by Charleston to a private investigator, suggesting that Charleston was threatened by the State with prosecution for the Vaughn murder and a separate robbery. He argues that the district court should have permitted discovery or held an evidentiary hearing to develop this evidence.

We conclude that the district court did not abuse its discretion in ruling on this matter. Even assuming that further discovery would have corroborated the

-12-

information presented by Moore-El's investigator, a habeas petitioner who has failed to develop the factual basis of a claim in state court proceedings is entitled to an evidentiary hearing under only very limited circumstances. The petitioner must show that the claim relies on a factual predicate that could not have been discovered through the exercise of due diligence, and that the facts would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

In this case, the district court concluded that Moore-El's "new" evidence could have been developed in state post-conviction proceedings. We agree that Moore-El failed to develop the factual basis for this claim in state court proceedings, and he has not established that he was unable to do so despite diligent efforts. *See Williams v. Taylor*, 529 U.S. 420, 436-37 (2000). There is no showing that he employed an investigator to obtain the "new" information from Charleston during state court proceedings, or that he sought an evidentiary hearing to develop this evidence at that time. *Id*. at 437. Under those circumstances, a federal court is "not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id*.

We also agree with the district court that "even if counsel had cross-examined Charleston on the threats and promises he now says were made to him, the outcome is not likely to have changed." (Add. at 5-6). More precisely, in the terms of the statute, these new facts would not be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable jury would have found Moore-El guilty. 28 U.S.C. § 2254(e)(2). The new information is additional impeachment material. Charleston already was impeached based on his inconsistent statements to the police, as well as his prior criminal history, pending charges, and admitted involvement in the plan to rob Vaughn. As the state motion court observed, the evidence in the record already "permitted an inference that the State would treat

-13-

him favorably if he testified for the State." It is arguable that additional attacks on Charleston's credibility would not even satisfy the "reasonable probability" standard, because they are largely cumulative, and the jury was already apprised of the potential taint on Charleston's credibility. *See Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir. 2004). We are confident that the proffered impeachment evidence is not "clear and convincing evidence" establishing that no reasonable jury would have convicted Moore-El.

IV.

Finally, we consider Moore-El's motion to amend his petition to add a claim that his trial counsel performed ineffectively by failing to discover and present the testimony of Loretta Petty, or, alternatively, that the government violated his due process rights by failing to disclose that she would provide exculpatory evidence. In support of his motion, Moore-El asserted that Petty provided a written statement in 2004 that she witnessed the shooting of Vaughn, and that the shooter was someone other than Moore-El. The motion to amend was filed on September 15, 2004, more than a year after the magistrate judge had issued her report and recommendation on the disposition of Moore-El's other claims. The district court entertained the motion, but denied it on the grounds that Moore-El could have raised the claim previously, and that there was no showing of a constitutional violation that resulted in Moore-El's wrongful conviction.

We review the denial of a motion to amend for abuse of discretion. Fed. R. Civ. P. 15(a); *Baker v. John Morell & Co.*, 382 F.3d 816, 830 (8th Cir. 2004); *see also* Fed. R. Civ. P. 81(a)(2); *Mayle v. Felix*, 125 S. Ct. 2562, 2569 (2005). As a general rule, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may disallow amendment for various reasons, however, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Delay alone is insufficient justification" for a denial of a motion to amend, *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998), but leave may be denied if it would be futile. *Foman*, 371 U.S. at 182. Moore-El's claims regarding Loretta Petty were not developed in the state courts, and they are therefore defaulted. *See Sweet v. Delo,* 125 F.3d 1144, 1149 (8th Cir. 1997). There is not cause and prejudice to excuse the default. Loretta Petty's presence at the scene of Vaughn's murder, and even the possibility that she witnessed the shooting, were discussed by witnesses at Moore-El's trial. (T. Tr. at 626, 637).[3] Nonetheless, Moore-El made no mention of Petty in his Rule 29.15 motion filed in October 1995. Moore-El's explanation for his failure to raise the claim until nearly a decade later is that Petty refused to talk to investigators in 1996, and indicated then that she would invoke the privilege against self-incrimination if called to testify about the Vaughn murder. (Pet'r Br. at 69). But to the extent this circumstance could establish cause for the default (even though the 1996 investigative interview was not conducted until after the Rule 29.15 motion was filed in October 1995), it also undermines Moore-El's claim that any constitutional violation with respect to her testimony at trial was prejudicial. If Petty was indeed unwilling to testify or talk to investigators before 2004, then trial counsel's alleged failure to interview her and the State's alleged failure to disclose information about her to Moore-El in 1994 could not have changed the outcome of his trial. In light of

---

[3]The district court observed that there is no explanation in the trial record or post-conviction record why neither the prosecution nor the defense called Petty at the trial. Moore-El's trial counsel said he declined to call one unidentified eyewitness because she was a drug addict, grossly unreliable, and ambivalent about whether she would testify if called. But he was not asked the name of this witness, and Moore-El says that counsel could have been referring to women other than Petty who were potential witnesses. Trial counsel was not asked whether he attempted to locate and interview Petty. (Add. at 7-8).

Petty's undisputed refusal to speak based on concerns of self-incrimination in January 1996, the district court did not err in concluding that Moore-El could not show a reasonable probability that Petty would have waived the privilege against self-incrimination, testified favorably to the defense, and affected the outcome of the trial in October 1994. As for the *Brady* claim, there is no evidence at all that the State knew Petty would provide exculpatory evidence if called as a witness at trial.

For similar reasons, we are not convinced that this is the "rare" and "extraordinary case" in which default should be excused because it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 321, 327 (1995) (internal quotations omitted). The district court was permitted to consider how the timing of Moore-El's evidentiary submission and Petty's likely credibility bear on the probable reliability of the proffered evidence. *Id.* at 332. As noted, although Petty wrote in 2004 that she would have testified at the trial in October 1994, she told Moore-El's investigator in January 1996 that she would refuse to testify based on the privilege against self-incrimination. We agree with the district court that Petty's reaction to an invitation to testify in a post-conviction proceeding at a time much closer to the trial is sufficient to defeat the claim that she "more likely than not" would have provided exculpatory evidence at trial. To meet the *Schlup* standard, moreover, Moore-El must show not only that Petty would have testified, but that if she had testified, no reasonable juror would have returned a verdict of guilty. At most, Petty's testimony would have established conflicting testimony among purported eyewitnesses to the murder, a circumstance that already existed. The jury would have been required to weigh credibility, just as it did with the trial witnesses, to determine whether there was reasonable doubt about Moore-El's guilt. The existence of such a "swearing match" would not establish that no reasonable juror could have credited the testimony of the prosecution witnesses and found Moore-El guilty beyond a reasonable doubt. *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) (per curiam), *pet. for cert. filed* (U.S. Aug.

10, 2005) (No. 05-5810). Accordingly, we conclude that the district court did not abuse its discretion in denying Moore-El's motion for leave to amend.

*  *  *

The judgment of the district court is affirmed.

_____